**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Mary Jo Stockman and John Stockman, husband and wife,**

**Plaintiffs,**

**v.**

**Frontier Airlines, Inc.,**

**Defendant and Third Party Plaintiff,**

**v.**

**City and County of Denver, Colorado, a municipal corporation; and Stearns Airport Equipment Company, Inc., n/k/a FKI Logistex Integration, Inc., a Delaware Corporation,**

**Third-Party Defendants.**

**Civil No. 02-767 (DSD/SRN)**

**REPORT AND RECOMMENDATION**

---

John McBride, Esq., on behalf of Plaintiffs

Daniel Hintz, Esq., on behalf of Defendant and Third Party-Plaintiff

Gregory Reigel, Esq., on behalf of Third-Party Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on August 22, 2002, on Defendant's Motion to Modify the Pretrial Scheduling Order (Doc. No. 21); Motion for Change of Venue (Doc. No. 9, 11, 13, and 17); and on Third-Party Defendant's



OCT 22 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Motion to Dismiss or for Change of Venue (Doc. No. 23 and 24). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends that Third-Party Defendant's Motion to Dismiss be granted and that Defendant's Motion for Change of Venue be denied.

## I. BACKGROUND

Plaintiff Mary Jo Stockman was injured when she fell through a trough in a jetway while deplaning one of Frontier Airlines' airplanes at the Denver airport. Plaintiffs brought suit against Frontier Airlines, Inc. in Hennepin County District Court. Defendants timely removed the case to this Court. Prior to seeking transfer of venue, Defendants moved for leave of the Court to file a third-party complaint against Third-Party Defendant the City and County of Denver, Colorado (Denver) and Stearns Airport Equipment Company. The late Honorable Magistrate Judge John Mason granted Defendant leave to commence the third-party action on May 21, 2002. Two days later, on May 23, 2002, Defendant brought its motion to transfer venue. Denver responded by bringing a motion to dismiss for lack of personal jurisdiction or alternatively for transfer of venue.

## II. THIRD-PARTY DEFENDANT DENVER'S MOTION TO DISMISS AND THIRD-PARTY PLAINTIFF FRONTIER'S MOTION TO TRANSFER VENUE UNDER § 1406(a)

### A. <u>Parties' Positions</u>

Denver moved this Court to dismiss it from the instant case for a lack of personal jurisdiction, or, alternatively, transfer the case to Colorado. Denver is a city and county within and citizen of the state of Colorado. Denver asserts that it does not do business within or with the state of Minnesota and that its contacts with Minnesota are neither continuous nor systematic.

Thus, Denver argues that this Court lacks general personal jurisdiction. In addition, Denver asserts that all events giving rise to Plaintiff's and Frontier's claims occurred within the state of Colorado. Thus, Denver argues that this Court lacks specific personal jurisdiction.

In support of a dismissal rather than a transfer of venue, Denver makes two arguments. First, Denver asserts that 28 U.S.C. section 1406(a), the transfer of venue provision relied on by Frontier, was not intended to provide a party a remedy for a jurisdictional defect where such party's error was not an "honest mistake." Denver contends that Frontier knew that this Court lacked personal jurisdiction over Denver when Frontier instituted its third-party action against Denver. Denver argues that Frontier joined Denver in this case as a third-party defendant as a tactic to strengthen Frontier's transfer of venue motion. Second, Denver argues that no party will be prejudiced by a dismissal. Denver contends that a dispute resolution provision in a lease agreement between Denver and Frontier, which allows Frontier to use the Denver International Airport, provides a remedy for Frontier's claims against Denver, and that remedy will not be lost merely with Denver's dismissal for lack of personal jurisdiction. Moreover, Denver asserts that the Plaintiffs will not be prejudiced because any claim they might have against Denver is barred by a Colorado Notice of Claim statute.[1]

Frontier responds by arguing that transferring venue is a far more appropriate option than dismissing Denver. Frontier argues that under 28 U.S.C. section 1406 this Court can transfer venue even though it lacks personal jurisdiction over Denver. Frontier concedes that although this Court has the power to dismiss Denver outright, transfer as opposed to a dismissal is in the

[1] At the hearing on this motion, Plaintiffs agreed that their claims against Denver are barred by Colo. Stat. § 24-10-109. (R. of Hearing, at 2284-95) (on file with Court).

interest of justice. Frontier contends that dismissing Denver would result in prejudice to Frontier because it might have to pursue a separate contribution action in Colorado, and this would be a waste of judicial resources.

### B. Personal Jurisdiction

As an initial matter, the Court finds that it lacks personal jurisdiction over Denver. At the hearing on this matter, Frontier did not want to outright concede that this Court lacks personal jurisdiction over Denver. Frontier, however, did explain on a couple of occasions that it "knew going into this that there was likely to be a personal jurisdiction problem with Denver" and that "we [Frontier] can't sue Denver unless we're there [in Colorado]." (R. of Hearing, at 2148-52, 2168) (on file with Court). Moreover, Frontier, in fact, did twice concede in its Memorandum in Support of Motion for Change of Venue and its Memorandum in Opposition to the City and County of Denver's Motion to Dismiss that this Court lacks personal jurisdiction over Denver. In its initial Memorandum, Frontier explained that this Court must have personal jurisdiction over the Third-Party Defendants in order to proceed and explained that it does not believe Denver is subject to personal jurisdiction in Minnesota. (Def. Mem. in Sup. of Mot. for Change of Venue at 5). Frontier later stated that "Frontier is unable to dispute Denver's claim that it is not subject to personal jurisdiction in Minnesota." (Def. Mem. in Opp. to Denver's Mot. to Dismiss at 2). Finally, Frontier has made no showing that this Court has personal jurisdiction over Denver. See Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998) ("To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating, by a prima facie showing, that personal jurisdiction exists.").

### C. Transfer of Venue

#### 1. Ancillary Venue

A party brought in as a third party defendant, under Rule 14 of the Federal Rules of Civil Procedure, may not object to venue if venue was proper between the original plaintiff and the original defendant. See, e.g., Bredberg v. Long, 778 F.2d 1285, 1288 (8th Cir. 1985) ("Where venue is proper for the original claims by a plaintiff against a defendant and additional claims are asserted as counterclaims or cross-claims, or come in through impleader, interpleader, or intervention, a venue objection may be unavailable as to the additional claims.") (citing as an example Brandt v. Olson, 179 F.Supp. 363, 370-72 (N.D. Iowa 1959)); United States v. Acord, 209 F.2d 709, 714 (10th Cir. 1954) ("[T]he reasons which give the court jurisdiction over an ancillary proceeding by virtue of its jurisdiction over the principal action, likewise support the conclusion that venue in the ancillary proceeding may depend or rest upon the venue in the main proceeding."); Brandt v. Olson, 179 F.Supp. 363, 372 (N.D. Iowa 1959). Thus, "the statutory venue limitations have no application to Rule 14 claims even if they would require the third-party action to be heard in another district had it been brought as an independent action." 6 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1445, p. 348 (2d ed. 1990) [hereinafter WRIGHT].

#### 2. 28 U.S.C. Section 1406(a)

Even where a court lacks personal jurisdiction over a defendant, it is well settled that such a court may nonetheless transfer the case to an appropriate venue under 28 U.S.C. § 1406(a). Goldlawr v. Heiman, 369 U.S. 463, 466-67 (1962); Mayo Clinic v. Kaiser, 383 F.2d 653, 654-55 (8th Cir. 1967); St. Mary's Hospital v. Wilson, 822 F.Supp. 1450, 1451 (D. Minn. 1993).

Section 1406(a) provides:

> The district court of a district in which is filed a case *laying venue in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought.

(emphasis added).

Thus, it would appear that "[a] prerequisite to invoking § 1406(a) is that venue must be improper." 15 WRIGHT, at § 3827 p. 263. In Goldlawr, the Court lacked personal jurisdiction over the defendant and venue was improper, and the Court allowed transfer under § 1406(a). If, however, venue is proper and only personal jurisdiction is lacking, the proper transfer provision to proceed under appears to be § 1404. Nonetheless, "[i]f, as Goldlawr holds, transfer can be ordered of a case from a district where both venue and personal jurisdiction are lacking, it should follow a fortiori that there can be transfer if venue is proper and only personal jurisdiction is lacking." 15 WRIGHT, at § 3827 p. 265. So, even though the proper transfer section to proceed under where venue is proper appears to be § 1404 and Goldlawr only dealt with § 1406, Goldlawr's reasoning for transfer where personal jurisdiction is lacking applies when proceeding under § 1404. See, e.g., Koehring v. Hyde Const. Co., 324 F.2d 295, 297-98 (5th Cir. 1963).

Courts, including the Eighth Circuit, however, "have held that § 1406(a) applies, even though venue is *proper* in the district, if personal jurisdiction cannot be obtained over the defendant in that district." 15 WRIGHT, at § 3827 p. 264 (emphasis added); see, e.g., Mayo Clinic, 383 F.2d at 654-56 (following Dubin v. United States, 380 F.2d 813 (5th Cir. 1967)). In Mayo Clinic, the Eighth Circuit concluded "that '§ 1406(a) operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there.'" Mayo Clinic, 383 F.2d at 656 (citing Dubin, 380 F.2d 813 (5th Cir. 1967)). Even though a court may be

authorized to transfer a case under § 1406(a) and transfer is favored over dismissal, e.g., Wilson, 822 F.Supp. at 1451, a decision to transfer will only be made "if it be in the interest of justice." 28 U.S.C. 1406(a).

The thrust of Goldlawr and subsequent cases expanding upon it, including Mayo Clinic, was to allow for transfer of cases under § 1406(a) even if personal jurisdiction is lacking because such a broad interpretation grants courts the power to avoid the injustice of an outright dismissal where, for example, the statute of limitations had run. E.g., Goldlawr. 369 U.S. at 466 (explaining that this case is "a typical example of the problem sought to be avoided, for dismissal here would have resulted in plaintiff's losing a substantial part of its cause of action under the statute of limitations"); Mayo Clinic, 383 F.2d at 656 (noting that the statute of limitations had expired at the time of transfer). This broad interpretation was in an effort to stay "in accord with the general purpose which has prompted many of the procedural changes . . . that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." Goldlawr, 369 U.S. at 466-67. The Goldlawr decision, although imparting a policy favoring removing procedural obstacles to adjudicating cases on their merits, does not compel transfer as opposed to dismissal; rather, it merely encourages transfer under § 1406(a) where personal jurisdiction is lacking, the plaintiff's error in choosing the forum was excusable, and to avoid injustice. Id. (noting that "Congress, by the enactment of § 1406(a), recognized that 'the interest of justice' *may* require that the complaint not be dismissed but rather that it be transferred ") (emphasis added).

"[I]n the absence of any demonstration that the plaintiff in good faith or through excusable neglect, inadvertence or mistake was led to believe that the action might be properly

commenced, and service of process obtained, in the district in which he chose to file the same," a court may, in the exercise of its discretion, dismiss a case rather than transfer it as being not in the interest of justice under § 1406(a). Skilling v. Funk Aircraft Co., 173 F.Supp. 939, 942 (W.D. Mo. 1959); Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993) (noting that "[f]ive other courts of appeals have addressed this issue [dismissing where the plaintiff should have known the court did not have personal jurisdiction over the defendant] . . . and have unanimously concluded that such a denial is not an abuse of discretion"); Spar, Inc. v. Info. Res., Inc., 956 F.2d 392, 394-95 (2d Cir. 1992); Deleski v. Raymark Industries, Inc., 819 F.2d 377, 381 (3d Cir. 1987); Cote v. Wadel, 796 F.2d 981, 984-85 (7th Cir. 1986); Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1523 (9th Cir. 1983); Dubin v. United States, 380 F.2d 813, 816 n.5 (5th Cir. 1967) ("It is obviously not 'in the interest of justice' to allow this section [§ 1406(a)] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district."); see also Chisholm v. UHP Projects, Inc., 1 F.Supp.2d 581, 587 (E.D. Va. 1998) (dismissing a claim against a third-party defendant "where counsel should have reasonably foreseen that the district court lacked jurisdiction").

This Court has found no Eighth Circuit case holding that a district court abuses its discretion by dismissing a case rather than transferring where the plaintiff could have reasonably foreseen that the forum in which he/she filed was improper, and the leading case of Mayo Clinic v. Kaiser, 383 F.2d 653 (8th Cir. 1967) is not to the contrary. One district court, however, has argued that Mayo Clinic teaches that "the degree of error in selecting a forum that is unable to exercise personal jurisdiction over the defendants is likewise immaterial" even if "a plaintiff deliberately brought his action in the wrong division or district." Turner v. McClain, 459

F.Supp. 898, 901-02 (E.D. Ark. 1978). In support of its reading of Mayo Clinic, Turner states that "Judge Mehaffy stated explicitly for the Court of Appeals 'that the degree of impropriety in the selection of the forum is immaterial." Id. (quoting Mayo Clinic, 383 F.2d at 655). This Court respectfully disagrees with this reading of Mayo Clinic. Unfortunately, words taken out of their context can mean almost anything. Thus, a review of the context surrounding this language in Mayo Clinic is necessary.

The issue in Mayo Clinic was whether a court was authorized to transfer a case under § 1406(a) where venue was *proper* but personal jurisdiction was lacking. Especially at the time of the Mayo Clinic decision, courts were unsure whether they could proceed under § 1406(a) when personal jurisdiction was lacking but venue was entirely *proper*.[2] See, e.g., Froelich v. Petrelli, 472 F.Supp. 756, 758-759 (D. Haw. 1979) (explaining the three lines of reasoning that had developed). Some courts thought that if venue was proper but personal jurisdiction was lacking, then the transfer provision they should proceed under was § 1404. E.g., United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964). This is so because the Goldlawr decision only dealt with a case where venue was *improper* and personal jurisdiction was lacking. In Mayo Clinic, venue was proper in the district court of Illinois, but that court could not exercise personal jurisdiction over the Minnesota defendants. Mayo Clinic, 383 F.2d at 654-55. The Illinois district court transferred the case to Minnesota. Id. The Minnesota district court held that

[2] Even since the time of the Mayo Clinic decision and others like it, there is still disagreement about which transfer provision to proceed under. The Fifth Circuit has recognized that determining whether § 1406 or § 1404 applies when personal jurisdiction is lacking but venue is proper is a "nearly hopeless muddle of conflicting reasoning and precedent." Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1106 (5th Cir. 1981).

transfer of the case could have been made under either § 1404(a) or § 1406(a). On appeal, the Mayo Clinic argued that since venue in the Illinois district court was entirely proper, § 1406(a) was inapplicable and the case should have just been dismissed for lack of personal jurisdiction. Id. So, the Eighth Circuit in Mayo Clinic was confronted with the issue of whether a court is authorized to transfer a case under § 1406(a) where venue was *proper* but personal jurisdiction is lacking.

In resolving the issue, the Eighth Circuit relied on Goldlawr's admonition that § 1406 should be interpreted broadly in concluding "that '§ 1406(a) operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there.'" Id. at 656 (quoting Dubin v. United States, 380 F.2d 813 (5th Cir. 1967)).[3] Under this rationale, a district is "wrong" where there is no personal jurisdiction over a defendant because the litigation may not proceed there. Thus, the Eighth Circuit concluded that § 1406(a) authorizes the transfer of a case whether venue is improper *or* proper as long as there is some procedural obstacle (thus the degree of impropriety is immaterial). This background puts the following language from Mayo

---

[3] The Eighth Circuit followed the Fifth Circuit's reasoning in Dubin v. United States, 380 F.2d 813 (5th Cir. 1967), which was an earlier case where venue was proper but the court lacked personal jurisdiction over the defendant. In Dubin, the defendant contended that the court was without power to transfer the case under § 1406 because venue was proper. The Fifth Circuit held:

> Looking to the language of § 1406, the statute is couched in terms of "laying venue in the wrong division or district." The statute does not refer to "wrong" venue, but rather to venue laid in a "wrong division or district." We conclude that a district is "wrong" within the meaning of § 1406 whenever there exists an "obstacle [to] an expeditious and orderly adjudication" on the merits. Inability to perfect service of process on a defendant in an otherwise correct venue is such an obstacle.

Dubin, 380 F.2d at 815.

Clinic in context: "[T]he degree of impropriety in the selection of the forum is immaterial . . . the language of § 1406 is broad enough to authorize transfer." Mayo Clinic, 383 F.2d at 655. Such language in Mayo Clinic does not mean "impropriety" in the sense of a party's bad faith or intentionally filing in a district that lacks personal jurisdiction as the Turner court has argued. Rather, "impropriety" refers to whether venue was proper or improper because the Mayo Clinic court had to decide whether § 1406 could be invoked where venue was proper, and held that § 1406(a) authorized transfer where venue was entirely proper as long as some procedural obstacle existed. This language is further explained by the sentence immediately following it: "Certainly a party who has been totally wrong in selecting the forum would have no greater right of transfer under § 1406(a) than a party who has selected a forum which is wrong only because service of process cannot be obtained." Mayo Clinic, 383 F.2d at 655-56. This language explains that the Mayo Clinic court used "impropriety" to refer to proper or improper venue because it addresses the concern that § 1406 might allow a transfer remedy where both venue and jurisdiction are lacking but no remedy where venue is proper and jurisdiction is lacking. See also Froelich v. Petrelli, 472 F.Supp. 756, 759, n.2 (D. Haw. 1979) (discussing this very point). Hence, the Mayo Clinic court held that the degree of impropriety as to venue is immaterial because § 1406 authorizes transfer where venue and jurisdiction are lacking or where venue is proper and jurisdiction is lacking.

Moreover, subsequent analysis of the issue support this Court's reading of Mayo Clinic. For instance, in Biby v. Kansas City Life Ins. Co., 629 F.2d 1289, 1294 (8th Cir. 1980), the Eighth Circuit concluded that the filing of a complaint was not a commencement of the action for purposes of tolling the statute of limitations because among other things the party filing "knew

there was serious doubt" as to personal jurisdiction over the defendants and ten days after filing the complaint, the plaintiffs successfully transferred the case to a different jurisdiction. The Eighth Circuit explained:

> Some measure of good faith expectation of proceeding in the court in which the complaint is filed is essential to tolling the statute of limitations. A filing of a complaint which is merely a procedural ploy will not suffice. Goldlawr, Inc. v. Heiman, supra, and its progeny, including Kaiser v. Mayo Clinic, 260 F.Supp. 900 (D. Minn. 1966), aff'd, 383 F.2d 653 (8th Cir. 1967), relied on by appellants, are distinguishable because each involved an erroneous selection of the initial forum rather than a selection devoid of a good faith expectation of proceeding in the forum.

Id.

In addition, the Fourth Circuit has stated that the issue of "whether a district court abuses its discretion by denying, as not in the interest of justice, a plaintiff's motion under section 1406(a) or section 1404(a) to transfer a case from an improper forum on the ground that the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper" has been decided by "[f]ive other courts of appeals . . . and have unanimously concluded that such a denial is *not* an abuse of discretion." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993) (emphasis added). The five courts of appeals cited by the Fourth Circuit, however, did not include a citation to an Eighth Circuit case. This suggests that when the Mayo Clinic court said "the degree of impropriety is immaterial," it did not mean a party's good or bad faith is immaterial. Otherwise Mayo Clinic would have been cited by the Fourth Circuit as the sole dissenting Circuit, because if bad faith in selecting a forum is immaterial to the transfer decision, then it would be an abuse of discretion not to transfer based on a party filing in a forum it knew was improper. Finally, as noted in Biby, the Goldlawr decision

involved a case where there was excusable neglect in filing in the wrong forum. There, the Supreme Court stated it was interpreting § 1406 to "avoid[] the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an *erroneous guess* with regard to the existence of some *elusive fact* of the kind upon which venue provisions often turn." Goldlawr v. Heiman, 369 U.S. 463, 466 (1962). Thus, excusable neglect, inadvertence, bad faith, and gamesmanship are directly relevant to a transfer decision under § 1406(a). See generally FED.R.CIV.P. 11(b) (noting that a motion must not be presented for an improper purpose).

**D. Court's Recommendation**

This Court recommends that Defendant and Third-Party Plaintiff Frontier's motion to transfer venue under § 1406(a) be denied and its complaint against Third-Party Defendant Denver be dismissed without prejudice.

Applying the principles above, venue between all parties is entirely proper. First, the case between the original Plaintiffs (the Stockmans) and the original Defendant (Frontier) laid venue based on 28 U.S.C. section 1391(a). Frontier resides in Minnesota because it is subject to personal jurisdiction in Minnesota, and, thus, venue is proper in the district of Minnesota. Second, based on ancillary venue, venue in the third-party proceeding between Frontier and Denver may "rest upon the venue in the main proceeding." United States v. Acord, 209 F.2d 709, 714 (10th Cir. 1954); see also e.g., Bredberg v. Long, 778 F.2d 1285, 1288 (8th Cir. 1985). Accordingly, since venue in the main proceeding between the Stockmans and Frontier is proper, venue in the ancillary proceeding is proper. This is true even if the statutory venue limitations "would require the third-party action to be heard in another district had it been brought as an

independent action." 6 WRIGHT, § 1445, p. 348.

A court, however, may transfer a case under § 1406(a) irrespective of whether venue is proper or improper. Here, even though transfer of the case would remove an obstacle to adjudication of all claims on the merits, such a transfer would not be in the interest of justice. This Court lacks personal jurisdiction over Denver. Therefore, Frontier's claim against Denver may not proceed in this forum. This Court will not transfer venue and instead dismiss Frontier's claim against Denver because it appears that Frontier asserted its claim against Denver knowing that this Court lacked personal jurisdiction over Denver as a strategy to create a procedural obstacle and increase its chances of gaining a transfer.[4]

The facts suggesting Frontier asserted a third-party claim against Denver knowing this Court lacked personal jurisdiction as a strategy rather than through excusable neglect are overwhelming. First, Frontier sought leave to add a third party claim on May 10, 2002. On May 21, 2002, leave to add a third party claim was granted. Just two days later, on May 23, 2002, Frontier moved to transfer venue. The timing of the motion to transfer venue coupled with the fact, discussed below, that Frontier knew personal jurisdiction could not be obtained over Denver suggests that Frontier did not have a "good faith expectation of proceeding in the court in which the complaint [was] filed." Biby v. Kansas City Life Ins. Co., 629 F.2d 1289, 1294 (8th Cir. 1980) (relying on the fact that "appellants knew that there was serious doubt that personal jurisdiction over the appellees could not be obtained" and that "ten days after the filing the

---

[4] Although this Court recognizes that Frontier may truly believe Denver is ultimately responsible for any damages Plaintiffs suffered, Frontier's assertion of a claim against Denver in this Court, given its lack of personal jurisdiction over Denver and the circumstances surrounding such claim, appears to be a strategy to enhance the likelihood of transfer to Colorado.

complaint, appellants sought and obtained an ex parte order transferring the case" to find that the plaintiff's selection of a forum was "devoid of good faith").

Second, Frontier knew that this Court lacked personal jurisdiction over Denver. After Frontier added Denver and Denver moved to dismiss for lack of personal jurisdiction, Frontier stated that "Frontier is unable to dispute Denver's claim that it is not subject to personal jurisdiction in Minnesota." (Def. Mem. in Opp. to Denver's Mot. to Dismiss at 2). Thus, Frontier has not even attempted to make a showing that this Court has personal jurisdiction over Denver. This fact is further evidence that Frontier wanted to add a third-party claim against Denver, in this Court, in order to increase its chances of gaining a transfer of venue by being able to argue under § 1404 or § 1406 that a transfer should be effected to cure a jurisdictional defect. If Frontier actually made an argument that this Court had personal jurisdiction over Denver, which a party would do if they really intended on proceeding in the court in which the complaint is filed, then Frontier would be undermining its objective of gaining transfer based on the jurisdictional defect. Frontier's knowledge that this Court lacked personal jurisdiction over Denver is further supported by the following exchange at the hearing on this matter:

> FRONTIER: We knew going into this that there was likely going to be a personal jurisdiction problem with Denver. So, you know, it was going to be very difficult to third party them in here. On the other hand, we want to sue Denver [and in order to do it in Colorado without having them in the case we would have to rely] solely on the convenience statute to get the transfer. So, it's kind of a catch twenty-two, you know, we can't sue Denver unless we're there [Colorado], but we can't get there unless we sue Denver. So we're kind of stuck. Basically, you know, went through the law, came up with, you know, the mechanism that we followed to sue them as a third-party knowing there could be a problem with personal jurisdiction and then seeking the transfer.
>
> COURT: Why couldn't you have sued them in Colorado, what would have been the problem?

> FRONTIER: Well, we could have, we could have sued them for contribution directly in Colorado, but we'd like to have both cases consolidated.
>
> COURT: But then you were going to make your motion in any event to change the venue of the primary case. But are you saying to me that you third-partied in Denver acknowledging that this Court didn't have personal jurisdiction because you thought that was a stronger strategy to transfer the case to Colorado than the traditional venue considerations?
>
> FRONTIER: We knew there could be, I'm not going to concede that there wouldn't be personal jurisdiction. There is no hard and fast rule that a municipality can't be subject to personal jurisdiction in another state . . . And to be honest, you know, yes we knew that adding them as a third-party defendant would bolster our chances to move them to Colorado. Procedurally, that's the only way we figured we'd be able to do it, keeping both the contribution claim and the plaintiff's original claim in one action.

(R. of Hearing, at 2141-2245) (on file with Court).

Frontier, in fact, did concede prior to the hearing on this matter in its Memorandum in Opposition to the City and County of Denver's Motion to Dismiss that this Court lacks personal jurisdiction over Denver when it stated that "Frontier is unable to dispute Denver's claim that it is not subject to personal jurisdiction in Minnesota." (Def. Mem. in Opp. to Denver's Mot. to Dismiss at 2). Moreover, in its initial Memorandum in Support of Motion For Change of Venue, Frontier explained that this Court must have personal jurisdiction over the Third-Party Defendants in order to proceed and explained that it does not believe Denver is subject to personal jurisdiction in Minnesota. (Def. Mem. in Sup. of Mot. for Change of Venue at 5).

Another fact favoring dismissal as opposed to transfer, is that Frontier will suffer little, if any, prejudice if its claim against Denver is dismissed without prejudice. Frontier can simply bring its claim against Denver in Colorado, or, can follow the dispute resolution provisions of its lease agreement with Denver. Goldlawr and its progeny are predicated on the notion that justice

is defeated by a dismissal where a plaintiff diligently and in good faith filed in an improper forum "merely because they had made an erroneous guess with regard to the existence of some elusive fact," and such dismissal would cause the plaintiff to lose his or her cause of action. Goldlawr, 369 U.S. at 466. This is simply not a situation like Goldlawr, Mayo Clinic, or other similar cases where a transfer is necessary to avoid the injustice of losing a claim to the statute of limitations. Here, the contribution claim will not be barred by a statute of limitations. Moreover, subsequent cases have dismissed rather than transferred venue where the statute of limitations had in fact run because the plaintiff should have foreseen the jurisdictional problems. E.g., Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986) ("We . . . remind plaintiffs and their counsel that they must determine where the plaintiff can get personal jurisdiction over the defendant before, not after, the statute of limitations runs; otherwise they court disaster. If the result in the present case seems harsh, that is because the costs to [Plaintiff] are palpable while the benefits are largely invisible. But the benefits are not trivial; litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction.").

Finally, there is a dispute resolution/arbitration clause in the lease between Frontier and Denver that provides that all "disputes under or related to" the lease agreement must be resolved by a dispute resolution proceeding. The lease between Frontier and Denver allows Frontier to use a portion of the Denver International Airport. Frontier's third-party claim against Denver is essentially that Denver is responsible for Plaintiff's injuries because, under the lease, Denver was responsible for the maintenance of the jetway. Thus, it is possible that this claim must be arbitrated. This complexity weighs in favor of dismissing. Moreover, some federal courts have expressed doubts about whether a court has subject matter jurisdiction over a case where one of

the parties has invoked an arbitration provision. See, e.g., Birch v. Pepsi Bottling Group, Inc., 207 F.Supp.2d 376, 380 (D. Md. 2002) ("'A valid agreement to arbitrate future disputes effectively ousts a court of jurisdiction.'"); Samson Resources Co. v. Int'l Bus. Partners, Inc., 906 F.Supp. 624, 625 (N.D. Okl. 1995) ("If a claim is subject to arbitration, then federal courts lack subject matter jurisdiction over the claim."). Although these cases blur the significant distinction between the ability to actually rule on the merits of a claim subject to arbitration and having subject matter jurisdiction in a constitutional and statutory sense, it creates an additional complexity any transfer order would have to address because a federal court is without power to do anything other than dismiss where it lacks subject matter jurisdiction. See, e.g., Klett v. PIM, 965 F.2d 587, 591 n.7 (8th Cir. 1992). See also e.g., DiMercurio v. Sphere Drake Ins., 202 F.3d 71, 78, 76 (1st Cir. 2000) ("'[It is] the unfortunate penchant of judges and legislators to use the term "jurisdiction" to describe the technically distinct notion of a court's authority to issue a specific type of remedy in a case in which the threshold requirements of subject-matter and personal jurisdiction are not open to question.' . . . Agreements to arbitrate are now typically viewed as contractual arrangements for resolving disputes rather than as an appropriation of a court's jurisdiction."); United Elec., Radio & Machine Workers v. Oliver Corp., 205 F.2d 376, 385 (8th Cir. 1953) ("Nor is this action beyond the jurisdiction of the District Court because of the arbitration provisions of the collective bargaining agreement and the Arbitration Act . . . . The Act does not deny a Federal court jurisdiction of a controversy subject to arbitration."); John Ashe Assoc. Inc. v. Envirogenics Co., 425 F.Supp. 238, 241 n.3 (E.D. Penn. 1977) ("An agreement between the parties to a contract to submit disputes to arbitration does not impair the constitutionally derived diversity jurisdiction of a federal district court. The arbitration

agreement limits the scope of the court's review, not its subject matter jurisdiction.").

Hence, based on the fact that Frontier filed its third-party complaint against Denver and could reasonably have foreseen that this Court lacked personal jurisdiction over Denver,[5] that Denver will suffer little prejudice if its third party claim is dismissed, and that Frontier's claim against Denver is likely subject to a dispute resolution provision, this Court recommends that a transfer of the case is not in the interest of justice and dismissal of Frontier's claim against Denver is appropriate.

## III. FRONTIER'S MOTION TO TRANSFER VENUE UNDER § 1404(a)

### A. Parties' Positions

In support of its motion, Frontier makes five arguments (1) any witnesses to the accident, similar accidents, and the maintenance/placement of warning signs "likely" reside near Denver; (2) Frontier will not be able to compel the attendance of witnesses outside the 100-mile reach of this Court's subpoena power; (3) Frontier is based in Colorado; (4) Plaintiffs are both practicing attorneys and should be able to bear the cost of traveling to Colorado; and (5) Plaintiff has offered no evidence as to what medical problems she has.

Plaintiffs respond with five counter arguments: (1) a transfer would merely shift the

---

[5] This factor alone is sufficient to warrant a dismissal as opposed to transfer. See Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993); Spar, Inc. v. Info. Res., Inc., 956 F.2d 392, 394-95 (2d Cir. 1992); Deleski v. Raymark Indus., Inc., 819 F.2d 377, 381 (3d Cir. 1987); Cote v. Wadel, 796 F.2d 981, 984-85 (7th Cir. 1986); Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1523 (9th Cir. 1983); Dubin v. United States, 380 F.2d 813, 816 n.5 (5th Cir. 1967) ("It is obviously not 'in the interest of justice' to allow this section [§ 1406(a)] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district."); see also Chisholm v. UHP Projects, Inc., 1 F.Supp.2d 581, 587 (E.D. Va. 1998) (dismissing a claim, in a case very similar to the present, against a third-party defendant "where counsel should have reasonably foreseen that the district court lacked jurisdiction").

inconvenience to them; (2) Frontier fails to identify any witnesses that reside in Colorado that may be relevant to this action; (3) the financial conditions of each party and the ease of travel, especially since Frontier is an airline, dictate against transfer; (4) Plaintiff's medical experts reside in Minnesota; and (5) Plaintiff's medical problems would make travel burdensome.

**B. 28 U.S.C. Section 1404(a)**

Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"Section 1404(a) accords [a] district court much discretion in deciding such motions." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 697 (8th Cir. 1997); see also Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955). "The party seeking transfer bears the heavy burden of showing that the balance of factors *strongly* favors the movant,"[6] United Mortgage. Corp. v. Plaza Mortgage. Corp., 853 F.Supp. 311, 315 (D. Minn. 1994), and "federal courts give considerable deference to a plaintiff's choice of forum." Terra Int'l, 119 F.3d at 695. Therefore, an order to transfer venue "should not be freely granted." In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982).

In deciding a motion to transfer, courts will consider three general categories of factors:

---

[6] Although the notion that a very strong showing must be made comes from Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), a case discussing forum non conveniens, this District still requires a strong showing that transfer is favored while cognizant of the fact that a lesser showing is required than under the doctrine of forum non conveniens. See Brockman v. Sun Valley Resorts, Inc., 923 F.Supp. 1176, 1178-80 (D. Minn. 1996); K-Tel Int'l, Inc. v. Tristar Prod., Inc., 169 F.Supp.2d 1033, 1045 (D. Minn. 2001); Graff v. Qwest Comm. Corp., 33 F.Supp.2d 1117, 1121 (D. Minn. 1999).

(1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. section 1404(a). Beyond these factors, a court must make "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors" to arrive at an equitable decision. E.g., Terra Int'l, 119 F.3d at 691 (citing Stewart Org., Inc v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

Under the convenience of the parties factor, the "normal presumption [is] in favor of a plaintiff's choice of forum" especially "where the plaintiff resides in the district in which the lawsuit was filed." Graff v. Qwest Comm. Corp., 33 F.Supp.2d 1117, 1121 (D. Minn. 1999) (citations omitted); see also e.g., K-Tel Int'l, Inc. v. Tristar Prod., Inc., 169 F.Supp.2d 1033, 1045 (D. Minn. 2001). Moreover, transferring venue to a court that merely shifts the inconvenience from one party to another is wholly inappropriate. E.g., Terra Int'l, 119 F.3d at 696-97; Alternative Pioneering Sys. v. Direct Innovative Prods., Inc., 1992 WL 510190, *5 (D. Minn. Aug., 20, 1992). Rather, transfer should be made only to a more convenient forum for the parties, "not to a forum likely to prove equally convenient or inconvenient." Van Dusen v. Barrack, 376 U.S. 612, 646 (1964).

Under the convenience of the witnesses factor, relevant considerations include the number of non-party witnesses, the location of all witnesses, the preference of courts for live testimony as opposed to depositions, e.g., K-Tel Int'l, 169 F.Supp.2d at 1045, and other issues concerning the "relative ease of access to sources of proof." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). This factor, however, "should not be determined solely upon a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts; the party seeking the transfer must clearly specify the essential witnesses to

be called and must make a general statement of what their testimony will cover." Nelson v. Master Lease Corp., 759 F.Supp. 1397, 1402 (D. Minn. 1991) (citing WRIGHT ET AL. FEDERAL PRACTICE AND PROCEDURE § 3851 at 425); see also Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992); NEO Corp. v. Fortistare Methane, LLC, 2001 WL 1640061, *4 (D. Minn. Sept. 6, 2001).

Under the interest of justice factor, a court may consider, among other things, the plaintiff's choice of forum, judicial economy, the parties' ability to bear the costs of litigating in each forum, obstacles to a fair trial, conflict of law issues, and advantages of having a local court determine local law. E.g., Terra Int'l, 119 F.3d at 696.

### C. Court's Recommendation

This Court recommends that Defendant Frontier's motion to transfer venue under § 1404(a) be denied.

#### 1. Convenience of the Parties

This factor strongly weighs in favor of keeping the case in Minnesota. Plaintiffs are private citizens of Minnesota. Defendant is a corporation based in Colorado. Defendant has offered no significant argument that convenience of the parties favors transfer. Since Plaintiffs chose this forum, they are entitled to a presumption in favor of it, especially, where as here, the Plaintiffs are citizens of the forum they chose. Defendants have simply not shown that Colorado would be a more convenient forum for the parties than Minnesota. Indeed, Defendants seek merely to shift the inconvenience from themselves to Plaintiffs.

**2. Convenience of the Witnesses**

This factor is even or slightly favors Plaintiffs. Defendants generally assert: "Any witnesses to the incident, other similar incidents, and the maintenance and/or placement of warnings in the jetway, all likely reside in or near Denver." (Def.'s Mem. in Sup. of Mot. for Change of Venue at 3). This speculative statement does not satisfy Defendant's obligation to "*clearly specify* the essential witnesses to be called." Nelson, 759 F.Supp. at 1402 (emphasis added). Defendant does not even assert that there are any witnesses to the incident or similar incidents let alone the names, locations, and general substance of such witnesses testimony. "[Frontier] has clearly failed to make this required showing. It has not provided the Court with any documentation concerning the likely witnesses to be called in this case, where they are located, and the scope of their testimony. Because [Frontier] has not provided the Court with any evidence to indicate that transfer to [Colorado] would be more convenient for the witnesses, this factor too weighs against transfer." NEO Corp., 2001 WL 1640061, *4.

Defendant also argues: "As any potential witnesses are likely located in or around Denver, they are well outside the 100-mile reach of a subpoena issued by the District Court of Minnesota, and could not be compelled to testify." (Def.'s Mem. in Sup. of Mot. for Change of Venue at 4). Again, Defendant fails to specify who the witnesses are rather than generally speculating that there may be some witness that can not be compelled to testify. Further, not only has Defendant failed to identify any witnesses outside the power of this Court's compulsory process, but Defendant has also failed to explain why such "potential" witnesses will not appear voluntarily. See generally Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Resources, Inc., 196 F.Supp.2d 21, 34 (D.D.C. 2002) ("Even witnesses unwilling to appear at trial can be subjected to

videotape depositions that adequately capture their demeanor and credibility for purposes of a trial."). Such a showing is inadequate. Moreover, this Court doubts Defendant would have any problem compelling its own employees to provide in-court testimony. In addition, Defendant's potential witnesses, at least its own employees, have the added convenience of Defendants line of business–air travel.

On the other hand, Plaintiffs state that their medical experts reside in Minnesota, although, they too, fail to specifically provide the names of those witnesses and the substance of their testimony. Plaintiffs note that they received all their medical care in Minnesota. Thus, their medical records are in Minnesota.

As to other sources of proof, Defendants note that this is a slip and fall case where the premises complained of is located in Colorado. Defendants, however, have neither made an argument nor submitted any evidence that viewing the actual premises would be highly instructive or appropriate for the fact finder. See generally Helsel v. Tishman Realty & Const. Co., Inc., 198 F.Supp.2d 710, 712 (D. Md. 2002) (declining to transfer venue in a slip and fall case and noting that viewing the premises did not seem necessary). In any event, pictures, diagrams, or video recordings are equally available, and there is no suggestion that such methods would be less effective than a field trip to a jetway not likely to be in the same condition as the one at the time of injury.

Given the above, the usefulness of this factor is somewhat limited, but, if anything, it militates against transfer.

**3. Interests of Justice**

This factor strongly favors keeping the case in Minnesota. Again, justice dictates that a

court should not easily disturb a plaintiff's choice of forum, and, here, Plaintiffs have chosen Minnesota as their forum.

Plaintiffs also would have a more difficult time financially litigating in Colorado than Defendants would have litigating in Minnesota. This conclusion follows from the fact that Plaintiffs are private citizens and Defendant is an established corporation.[7] Further, the costs and inconvenience to Defendant of traveling to a distant forum are lessened by the fact that Defendant is an airline. Defendant's "information and belief" that Plaintiffs have adequate funds to travel hardly tilts the balances of justice when compared to Defendant's own resources.

Although Defendants possibly may be able to maintain a separate contribution action against Denver in Colorado without being forced to arbitrate such claim, such fact is only one factor within the interest of justice category. Thus, judicial economy might suffer but only if Defendant is not forced into dispute resolution under its lease with Denver.

There is no indication that this case presents some novel issue of law or one that Colorado courts would have an acute interest in deciding, and such an argument has not been made. Contra Brockman v. Sun Valley Resorts, Inc., 923 F.Supp. 1176 (D. Minn. 1996) (explaining that the controlling legal question of air quality standards dictated the transfer).

Neither Defendant nor Plaintiff have raised any concern about conflicts of law issues or obstacles to a fair trial.

Finally, since this Court should consider "all relevant factors" presented by a particular

---

[7] This is not to say that a corporation should unnecessarily bear the expense of litigation with a private citizen just because it is a corporation. Any additional expense of litigating in a distance forum, however, is a product of our litigation system's allowance for a plaintiff to choose the forum.

case's facts, e.g., Terra Int'l, 119 F.3d at 691 (citing Stewart Org., Inc v. Ricoh Corp., 487 U.S. 22, 29 (1988)), this Court will consider the fact that Plaintiff was physically injured, or at least so represents in her complaint. Thus, even though Defendant is correct in pointing out that Plaintiffs failed to present medical evidence of their difficulty with travel, here equity marginally dictates against forcing the injured to travel extensively if such travel could be avoided.

Given the above, the interest of justice, favors keeping the case in Minnesota.

Since no factor–convenience of the parties, convenience of the witnesses, or the interests of justice–to be considered under a § 1404(a) transfer of venue analysis actually favors transferring venue to Colorado, this Court recommends Defendant's motion be denied. In failing to convince this Court that any of the transfer factors favors an order to transfer, Defendant has failed to carry its "heavy burden of showing that the balance of factors *strongly* favors" a decision to transfer. E.g., United Mortgage. Corp. v. Plaza Mortgage. Corp., 853 F.Supp. 311, 315 (D. Minn. 1994).

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. Third-Party Defendant the City and County of Denver's Motion to Dismiss be **GRANTED** (Doc. No. 23); accordingly Third-Party Plaintiff Frontier Airlines' third-party complaint against Third-Party Defendant the City and County of Denver be **DISMISSED WITHOUT PREJUDICE**; and Third-Party Defendant the City and County of Denver's alternative Motion for Change of Venue (Doc. No. 24) be **DENIED AS MOOT**.

2. Defendant and Third-Party Plaintiff Frontier Airlines' Motion for Change of Venue (Doc. No. 9, 11, 13, and 17) be **DENIED**.

Dated: October 22, 2002

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by November 1, 2002, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Any party wising to oppose such objections must file and serve all parties with its response. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.